UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 05-CV-10769-MLW

| | |
|---|---|
| SCOTT BAMFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) |
| | ) |
| KPMG, LLP and | ) |
| METROPOLITAN LIFE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' ANSWER AND COUNTERCLAIM OF METROPOLITAN LIFE INSURANCE COMPANY

Defendants KPMG, LLP ("KPMG") and Metropolitan Life Insurance Company ("MetLife") hereby answer the numbered paragraphs of plaintiff's Complaint as follows.

1. The defendants state that paragraph 1 states legal conclusions and a characterization of the complaint as to which no response is required. Otherwise, denied.

2. The defendants are without knowledge of information sufficient to form a belief as to the truth of the allegations contained in the beginning of the first sentence of paragraph 2 of the Complaint. The defendants admit that Scott Bamford ("Bamford") was an employee of KPMG.

3. The defendants admit the allegations contained in paragraph 3 of the Complaint.

4. The defendants deny the allegations contained in paragraph 4 of the Complaint.

5. The defendants admit only that Bamford was an employee of KPMG and a participant in the KPMG, LLP Employees Long Term Disability Plan (the "Plan"), an employee

welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

6. In response to paragraph 6, the defendants state that on or about October 25, 2001, KPMG submitted a disability claim on behalf of Scott Bamford to MetLife. Further responding, the defendants state that on or about October 26, 2001, MetLife notified Bamford that disability benefits would begin on September 3, 2001. Further answering, defendants state that Bamford received long-term disability benefits commencing on February 25, 2002. Otherwise, denied.

7. In response to paragraph 7, defendants state that on or about February 25, 2002, MetLife informed Bamford by letter of the requirement to apply for Social Security Disability benefits, and that such benefits must be taken into consideration when calculating long-term disability benefits under the Plan. Further responding, defendants state that upon information and belief on or about May 17, 2002, Bamford was informed that the Social Security Administration had denied his claim for benefits and that on or about July 29, 2002, the Social Security Administration denied Bamford's request for reconsideration. Further responding, the defendants state that upon information and belief on or about March 20, 2003, the Social Security Administration issued a decision which awarded disability benefits to Bamford under the Social Security Act. Further responding, defendants state that on or about May of 2003, MetLife was informed of a favorable decision by the Social Security Administration.

8. In response to paragraph 8, the defendants deny that Bamford was first informed in June of 2003 that, pursuant to the terms of the Plan, the amount of his monthly long-term disability would be offset by other income, including Social Security Benefits. Further

2

responding, defendants state that, to the extent the allegations mischaracterize or fail to include all facts associated with the correspondence, MetLife's correspondence speaks for itself and therefore, deny the allegations contained in the first three sentences of paragraph 8. In response to the last sentence of paragraph 8, the defendants state that on or about July 15, 2003, Bamford sent a check for $4,337.31 to MetLife. Otherwise, denied.

9. In response to paragraph 9, the defendants admit that on or about September 11, 2003, MetLife informed Bamford by letter that his claim for long-term disability benefits had been withdrawn effective September 3, 2003. The defendants state that, to the extent the allegations mischaracterize or fail to include all facts associated with the correspondence, MetLife's correspondence speaks for itself and therefore, deny the allegations contained in paragraph 9.

10. In response to paragraph 10, the defendants admit that Bamford, through his attorney, Daniel N. Turcotte, appealed the withdrawal of long-term disability benefits on or about December 15, 2003. Further responding, the defendants admit that on or about January 6, 2004, MetLife informed Daniel N. Turcotte that it had received the appeal letter. Otherwise, denied.

11. In response to paragraph 11, the defendants state that to the extent the allegations contained in Paragraph 11 mischaracterize or fail to include all facts associated with the letter, MetLife's letter of January 21, 2004, speaks for itself and therefore, deny the allegations contained in paragraph 11.

12. In response to paragraph 12, the defendants state that to the extent the allegations contained in Paragraph 12 mischaracterize or fail to include all facts associated with the

letter, MetLife's letter of February 13, 2004, speaks for itself and therefore, deny the allegations contained in paragraph 12.

13. In response to paragraph 13, the defendants admit that under the Plan, MetLife has discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Further responding, defendants state that MetLife insures the Plan under a group policy issued to KPMG. Otherwise, denied.

14. In response to paragraph 14, the defendants admit that KPMG is the Plan Administrator and that MetLife insures the Plan under a group policy issued to KPMG. Otherwise, denied.

15. The defendants deny the allegations contained in paragraph 15 of the Complaint.

16. The defendants deny the allegations of paragraph 16 of the Complaint.

17. The defendants are without knowledge or information sufficient to form a belief as to whether Bamford has incurred attorney's fees. Otherwise, denied.

18. The remaining paragraphs of the complaint entitled "WHEREFORE" set forth requests for relief as to which no response is required.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiff's Complaint seeks benefits pursuant to an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 et seq., which provides the exclusive remedies for an alleged improper denial of benefits, and Plaintiff is limited to the rights and remedies afforded under ERISA. Under ERISA, Plaintiff is not entitled to seek compensatory, punitive, or other extra-contractual damages.

### Second Affirmative Defense

To the extent (and without admitting that) plaintiff is entitled to recover any benefits under the Plan at issue, such recovery is subject to setoffs under the terms of the Plan, including without limitation, Social Security disability benefits.

### Third Affirmative Defense

To the extent (and without admitting that) plaintiff is entitled to benefits at this time, such immediate entitlement does not mean that plaintiff has an entitlement to unlimited future benefits given, inter alia, the possibility for future recovery from any disabling conditions (the existence of which is denied), as well as the effect of different Plan requirements, exclusions, or limitations.

### Fourth Affirmative Defense

To the extent (and without admitting that) plaintiff was entitled to benefits after September 3, 2003, such entitlement is limited to the terms of the Plan, including the 24-month limitation for neuromusculoskeletal and soft tissue disorders.

## Fifth Affirmative Defense

The determinations by any defendant regarding plaintiff's claim for benefits were not arbitrary and capricious, but rather were reasonable based on the evidence submitted by plaintiff and comprising the claim file, and were made in good faith, in accordance with the terms of the Plan and applicable law.

## Sixth Affirmative Defense

All determinations made by any defendant with respect to plaintiff's claim for benefits and requests for repayment of Plan assets were made in the interest of all plan participants and beneficiaries and in accordance with the terms and conditions of the plan documents.

## Seventh Affirmative Defense

The prayers for relief and jury demand are barred to the extent the relief sought is not permitted by ERISA.

## Eighth Affirmative Defense

Plaintiff's complaint, in whole or in part, fails to state a claim upon which relief can be granted under ERISA.

## Ninth Affirmative Defense

The plaintiff's claims are barred by the doctrine of waiver.

## Tenth Affirmative Defense

The plaintiff's claims are barred by the doctrine of estoppel.

## Eleventh Affirmative Defense

The plaintiff's claims are barred by the doctrine of laches.

WHEREFORE, the defendants respectfully request that the Court dismiss the Complaint with prejudice, and award defendants their attorneys fees and costs.

### COUNTERCLAIM FOR RESTITUTION OF METROPOLITAN LIFE INSURANCE COMPANY

1. This counterclaim for restitution arises from the overpayment of disability benefits on behalf of the KPMG, LLP Employees Long Term Disability Benefits Plan to the plaintiff during the period of February 25, 2002 through September 24, 2003. The counterclaim is brought pursuant to 29 U.S.C. §1132 (a)(3) to obtain appropriate equitable relief and to enforce the terms of the Plan which require offsets for other income benefits to the long term disability benefits paid by the Plan.

2. The KPMG, LLP Employees Long Term Disability Plan ("the Plan"), is an employee welfare benefit plan governed by the Employee Retirement Security Act of 1974, as amended ("ERISA").

3. The counterclaim plaintiff is Metropolitan Life Insurance Company ("MetLife"), a corporation organized under Delaware law with its principal place of business at 200 Park Avenue, New York, New York. MetLife is a fiduciary of the Plan.

4. Counterclaim defendant Scott Bamford ("Bamford") was an employee of defendant KPMG, LLP ("KPMG") and a participant in the Plan.

5. The Plan provides that monthly long term disability benefits provided to the participant will be reduced by other income benefits which participants have received or are entitled to receive from sources other than MetLife, including but not limited to Social Security disability benefits.

6. In or about May of 2003, Bamford received an award of disability benefits from the Social Security Administration. The Social Security Administration reduced the benefits awarded to Bamford by the State Disability award he received from Rhode Island. As of June 24, 2003, MetLife understood that the amount of the Social Security disability benefit received by Bamford was $396.00 per month.

7. Consistent with the terms of the Plan, on June 24, 2003, MetLife informed Bamford by letter of the amount of the overpayment of Plan benefits based upon the Social Security award, and requested that Bamford remit the overpayment resulting from the Social Security award by July 16, 2003. In that letter, MetLife also informed Bamford that the claim might need to be adjusted again resulting in an additional overpayment if the State Disability award ceased, and there was an increased Social Security benefit. As of June 24, 2003, MetLife informed Bamford that the amount of the overpayment, reduced by certain amounts including an attorney fee credit, was $4,337.31.

8. On or about July 15, 2003, Bamford paid the sum of $4,337.31 to MetLife.

9. On or about January 21, 2004, MetLife notified Bamford that it had been informed that Bamford's Social Security benefits had been increased due to the cessation of his State Disability award. The amount of Social Security benefit received by Bamford was increased to $902.00 per month effective April, 2002. As a result, MetLife informed Bamford that an additional overpayment on the claim for Plan benefits was due in the amount of $7,916.58.

10. Bamford has not repaid the remaining $7,916.58 to MetLife.

11. Consistent with its role as Plan fiduciary, MetLife seeks restitution of the $7,916.58 owed to the Plan.

12. Pursuant to Section 502 (a)(3) of ERISA, 29 U.S.C. §1132(a)(3), MetLife is entitled to equitable relief in the form of restitution on behalf of the Plan.

WHEREFORE, MetLife respectfully requests that this Court order Bamford to make restitution in the amount of $7,916.58 to MetLife on behalf of the Plan. Further, MetLife respectfully requests its attorneys' fees and costs associated with this action.

                              KPMG, LLP and METROPOLITAN LIFE
                              INSURANCE COMPANY
                              By their attorneys,

                              /s/ Constance M. McGrane
                              James F. Kavanaugh, Jr. BBO #262360
                              Constance M. McGrane BBO #546745
                              CONN KAVANAUGH ROSENTHAL PEISCH
                              & FORD, LLP
                              Ten Post Office Square
                              Boston, MA 02109
                              617-482-8200

Dated: June 22, 2005

228308.1